IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

150 Carlos Chardón E. Avenue, San Juan, PR 009161767

| | |
|---|---|
| PLAINTIFF<br><br>Rocío Méndez Morales<br><br>v.<br><br>DEFENDANTS<br><br>Marshalls Inc.,<br><br>Marshalls Home Goods Plaza del Este,<br><br>Joel Molina, Juanita Castro, Julia, Jane Doe | RECEIPT # _____<br>AMOUNT: $402.00<br><br>MAR 1 2 2021<br><br>CASHIER'S SIGNATURE<br><br>21-cv-1115(WGY) |

COMPLAINT

TO THE HONORABBLE COURT:

Plaintiff, Rocío Méndez Morales, respectfully submitis to this Honorable Court her righteous claim against Defendants due to their fault and negligence for an incident that occurred in one of the Defendant's facilities.

1. On March 8, 2021, around 6pm, an incident occurred between two customers that were in the line to pay at Marshalls Home Goods. See Exhibit 1.

2. Plaintiff is Rocío Méndez, Morales, who respectfully submits to the Honorable Court this PRO SE civil suit, female, of 39 years old, unlicensed lawyer, and business owner, long time customer for decades of Marshalls who has spent thousands in the stores throughout the years, and who suffered emotional distress and her credibility and reputation affected negatively resulting from defendants' intentional and negligent actions and from outrageous action by one of Defendants' customers.

3. Defendant is Marshalls Inc. with physical address Plaza del Este located in Road 887, km 7, 65 Infanteria Rd., Carolina, PR 00979.

4. Defendant is Marshalls located at Plaza del Este located in Road 887, km 7, 65 Infanteria Rd., Carolina, PR 00979 and where the incident herein stated occurred incurring in civil liability and responsibility while Plaintiff was doing shopping.

5. Defendant is Juanita Castro who is the Assistant Manager and who dealt with the incident in the check-out line of Marshalls and denied Plaintiff of an Incident Report form to fill out. She came to the scene upon Plaintiff calling from the line a Manager and decided the incident was fault of Plaintiff taking for good customer Defendant Jane Doe's version.

6. Defendant is Julia who is the Manager and didn't allow for Plaintiff to submit a report of the incident and whom Plaintiff informed that she wasn't able to complete her transaction as Plaintiff had to get out of the line, because the other customer was difficult. She accepted that their customer stayed in the line and was able to finish the transaction and leave, but first said that the customer had been escorted.

7. Defendant is Joel Molina who is General Manager and denied Plaintiff an Incident Report and that Plaintiff had to contact the police and file the claim there.

8. Defendant Jane Doe is the woman who was Marshall's customer in front of Plaintiff at the check-out line and had a confrontation with Plaintiff. When asked, she didn't want to give her name to Plaintiff that was going to issue a claim. She lied to the Assistant Manager about Plaintiff coming near her.

9. Plaintiff was in the check-out order line waiting to pay the item. As plaintiff was standing in the line, the customer Defendant Jane Doe in front said in a very rough manner, "No te me Pegues."("Stay away from me.") Plaintiff replied with an apology and stepped backed a few steps to get into the designated circle.

10. Plaintiff stepped back, but the other customer Jane Doe was in front of her kept talking to Plaintiff complaining that she was coming near her and didn't thank Plaintiff for stepping back. Plaintiff told the customer to keep it moving. Jane Doe walked forward to her circle.

11. Plaintiff didn't invade Jane Doe's designated circle. She noticed that Jane Doe didn't have much space, because there was a customer in front of her in the circle, and Jane Doe was standing between two customers out of a circle.

12. The customer Jane Doe moved forward to her circle, and she had to walk. Plaintiff believes that the customer in front of her was not stepping in the circle when she confronted Plaintiff.

13. Plaintiff said quietly to herself, "I hope you get COVID", because Jane Doe didn't thank her for stepping back and treating her with discrimination like Plaintiff was contagious.

14. Jane Doe turned around and asked what did Plaintiff said.

15. Plaintiff retorted that she had said nothing.

16. The customer turned sideways and started staring intensely at the Plaintiff. Plaintiff gave her a look as what was happening. Plaintiff finally asked the customer if she was intimidating her.

17. The customer said kept saying that Plaintiff had been coming near her.

18. Plaintiff kept saying that she was in her place, therefore, the customer acting intentionally or recklessly; with a conduct that was extreme and outrageous and is the cause of the distress; as Plaintiff suffers severe emotional distress as a result of defendant's conduct making Plaintiff look like she doesn't follow instructions and was harassing Jane Doe.[8]

19. In the middle of the confrontation between Jane Doe and Plaintiff, the customer Doe said to Plaintiff turning back that she was a nut while looking at the end of the line, and said that they were laughing at Plaintiff causing to her emotional distress.

20. Plaintiff started to ask outloud for a manager in the line, and Juanita Castro appeared at the scene. Jane Doe to talk first to Castro telling her that Plaintiff kept coming near her.

21. Assistant manager named Juanita Castro dealt with the situation negligently. Castro appeared and Jane Doe went to her to say that Plaintiff kept getting closer to her, and Castro said that Jane Doe was taking care of her security and took her word for good making it appear as Plaintiff wasn't following instructions and even harassing Jane Doe.

22. Plaintiff said to Castro that she was standing in her place and that she would sue. She asked Castro to file an incident report and she denied it to Plaintiff.

23. Plaintiff had no choice but to abandon the line since the Doe kept harassing her. Plaintiff's transaction was interfered by Jane Doe and Castro.

24. Plaintiff went to her father, Reinaldo Méndez, to tell him about the situation and that she had to get out of the line, and we would have to do the long line again to pay only one item that it is for Plaintiff's bathroom. Plaintiff's father remained on the line and paid while Plaintiff was smoking out a cigarette because of the stress due to the incident, and also, had to contact the managers. Plaintiff never got back on the line.

25. After leaving the line, Plaintiff went again on her own to Castro to inform her of the situation and misunderstanding that occurred, and that Plaintiff wished to submit an internal report of the incident and watch the cameras since Plaintiff's version can be proved with the videos taken by the store security cameras. She informed Plaintiff that her case would be dealt by Julia who came over to Plaintiff.

26. Julia informed Plaintiff that Plaintiff would have to call the next day Joel Molina, the General Manager since 6am the next day. Julia denied Plaintiff on a report of the incident by the store and also denied that she watch the cameras. Julia did not have a name tag.

27. Plaintiff called Joel Molina the next day after 6am and between 7am to report the situation and that they hadn't allowed for to submit an internal complaint.

28. In telephone conversation the next day after the incident, Plaintiff spoke with Joel Molina who told her to file a complaint with the police. Plaintiff questioned him as to w,hy they didn't let her file a complaint at the store, or claim, or formularies to inform officially of the incident.

29. Plaintiff went to the police later that same day to file the complaint against Marshalls. The police officer issued a complaint 2021-8-116-01863 by state police agent Carrasquillo, number 36299, from the South Carolina precinct, and who told Plaintiff that they couldn't investigate or watch the cameras, because no crime or criminal activity was being reported.

30. Plaintiff asked the police to protect the cameras, because all the truth of the incident is there is the videos and they can prove Plaintiff's case, as to show Plaintiff standing in the designated circle and Jane Doe shouting to her from the circle in front, as well as showing Jane Doe not in the circle at first. Also, the video can show that Plaintiff left a circle in between her and Jane Doe. It can show that Jane Doe kept shouting to Plaintiff, and Plaintiff turned around and gave her back.

31. Plaintiff suffered attack to her reputation and dignity by Jane Doe being called that I was a nut and her credibility since Jane Doe lied to the Assistant Manager saying that Plainitff was getting close to her not respecting the social distancing, and the Assistant Manager gave reason to this customer saying that she was protecting her security, but that was only just once and what started the situation, but Plaintiff stepped into the circle and Jane Doe was far away from Plaintiff accusing her to the point where Plaintiff left a social distancing circle in between and kept telling Jane Doe out loud that she was in her place.

32. Plaintiff suffered losses such as time, emotional health, and the turn in the line and opportunity to finish the transaction rightfully, whereas Jane Doe was able to complete her transaction as Julia, the Manager. Julia said that Jane Doe was escorted her, but it is alleged that really she stayed on the line and was able to finish her transaction and pay.

33. Plaintiff suffers loss to her reputation and credibility since she's a lawyer accused of lying and not following instructions established by government guidelines.

**Federal Jurisdiction**

Plaintiff alludes to subject matter jurisdiction claiming tortious interference of business, Infliction of emotional distress, breach of contract, violations to the Constitution of the Commonwealth of Puerto Rico that prohibit attacks to a person's honor and reputation and dignity, and Puerto Rico Civil Code, articles 1802 for tortious actions.

**Statutes of limitation**

Plaintiff is filing a torts suit for damages due to negligence and intentional acts within a 1 year upon learning of the harm.   Plaintiff's incident occurred on March 8, 2021., days before filing this suit. See Exhibit 1.

**Damages**

Moral damages

Moral damages due to emotional inflection of distress by Jane Doe and Defendant affecting her credibility, reputation, and emotional health because of the incident since both defendants misrepresented what happened in the incident making look like Plaintiff wasn't following the rules of the check-out line and harassing.  Defendant didn't defend Plaintiff from false accusations by Jane Doe and took for good Jane Doe's version.  Plaintiff asks for remuneration for Jane Doe's outrageous and offensive behavior.

$15,000,000

Contractual damages for breach of contract by Defendant and for the tortious interference of business.

$10,000,000

Punitive damages

Plaintiff requests punishing the defendant, and also to deter him from engaging in the same conduct in the future such as denying customers that have incidents with other customers from filing an incident report which resulting that the affected customer can make no internal claim to the defendant. Also, Plaintiff wants to deter Defendant from managing the situation taking a customer's word over another without evidence. Plaintiff believes that defendant gives no evidence or record that an incident that took place and pretend that it never happened resorting Plaintiff to witnesses and the cameras where an injustice and embarrassment and misinterpretation of facts that Jane Doe presented against Plaintiff and that Defendant took for good.

$5,000,000

WHEREFORE, Plaintiff respectfully submits to this Honorable Court this claim for damages that total $30 million due to unlawful acts and negligence by Defendants in violation of law resulting in unfair business practice.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico on this day, March 11, 2021.

Rocío Méndez Morales
BA, MBA, JD
122 CS5
Valle Arriba Heights

Carolina, PR 00984

787-645-8851